UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Andrea Kelley, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 1:26-cv-509 |
| v. | § | |
| | § | JURY DEMANDED |
| Espy, LLC, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

Plaintiff Andrea Kelley ("Plaintiff"), by her counsel, Harman Green LLC, alleges for her Complaint against Defendant Espy, LLC ("Defendant") as follows:

## PRELIMINARY STATEMENT

1.      This case concerns discrimination and retaliation against a very senior employee for Defendant after she complained about discrimination.

2.      Plaintiff complained about discrimination against herself, and other women, on the basis of her gender, and was immediately subjected to punishment.

## JURISDICTION

3.      Pursuant to 28 U.S.C. §1331 this Court may properly hear Plaintiff's claims as they arise under a federal statute.

4.      Pursuant to 28 U.S.C. §1367 this Court may properly hear Plaintiff's State law claims as they arise out of the same nucleus of operative fact so as to create the same case or controversy.

5.      Plaintiff timely filed with the Equal Employment Opportunity Commission and received a Right to Sue letter on December 1, 2025.  This case was filed within 90 days of receipt of that Right to Sue Letter.

## PARTIES

1

6. Plaintiff was and is a resident of Dripping Springs, Texas

7. Defendant Espy, LLC was and is registered in the State of Delaware. Service is to be made on Corporation Service Company at 251 Little Falls Drive, Wilmington, DE 19808. Defendant has a primary headquarters at 13033 Trautwein Road, Austin, TX 78737, United States.

**JURY DEMAND**

8. Plaintiff respectfully requests a trial by jury.

**STATEMENT OF FACTS**

9. Plaintiff had been employed by Espy LLC since October 25, 2010, a tenure of more than 15 years.

10. Over the course of Plaintiff's employment, Plaintiff progressed into a Vice President / General Manager role with responsibility for operations, execution, forecasting, finance coordination, compliance, contract management, and oversight of program delivery.

11. In that role, Plaintiff handled company-wide operations for Espy, including purchasing, inventory management, ERP administration, export compliance (including Empowered Official responsibilities), security oversight, finance coordination, HR support, and overall business continuity across all Espy contracts and programs.

12. In all ways, Plaintiff was qualified for her employment.

13. Plaintiff also served as the Facility Security Officer (FSO), with responsibility for security compliance, access controls, and regulatory obligations.

14. Plaintiff served in the VP/GM role through October 2024.

15. Plaintiff was eventually replaced by a male who she believed was less qualified than her.

16. In late 2022, Defendant was in the process of finalizing an acquisition that affected Plaintiff's employment structure.

2

17. Thereafter, Defendant's male employees dominated the workplace, and received higher income than female employees.

18. In December 2022, Plaintiff received Plaintiff's first formal disciplinary write-up shortly after raising concerns about revenue forecasting assumptions, execution feasibility, and operational gaps. This was incredibly problematic as Plaintiff was challenging male authority in the workplace, which created the beginning of the end of the employment.

19. Prior to this, Plaintiff had no documented disciplinary history.

20. Plaintiff began receiving negative performance feedback only after raising concerns that challenged male employees' expectations.

21. Another female executive was written up at this same time.

22. No male executives were written up because of the concerns Plaintiff raised.

23. Defendant was operating under a stand-alone Delegation of Authority structure while transitioning to MPG policies, and formal CAR training had not been provided to Plaintiff.

24. The CFO, who owned financial policy and procedure and had oversight responsibility for CAR implementation, did not receive formal discipline.

25. Throughout 2023, Plaintiff continued raising concerns to senior leadership regarding increasingly aggressive revenue expectations that were not supported by contractual commitments, customer readiness, or execution realities.

26. From 2023 through October 2024, Plaintiff held regular one-on-one meetings with Carrie Widofsky in her role within Human Resources.

27. During those conversations, Plaintiff discussed stress, burnout, and concerns about the sustainability of Plaintiff's role.

28. No corrective action, accommodations, or support were offered.

29. In summer 2024, Plaintiff served as Vice President / General Manager and carried

full operational responsibility for the site.

30. Around this time, Defendant recruited a male consultant who was later installed into Plaintiff's former role.

31. At the same time, Plaintiff was being scrutinized more heavily than the male site leaders.

32. The expectations and level of review applied to Plaintiff did not appear consistent with those applied across other sites led by male executives.

33. During a conversation with Zelma Diaz in summer 2024, Plaintiff expressed clear frustration with the discriminatory practices.

34. Plaintiff stated that she felt targeted and treated differently than the male executives.

35. Plaintiff also raised concerns that her compensation did not align with the scope of responsibility she was carrying, especially compared to male counterparts.

36. The discussion included salary comparisons.

37. Ms. Diaz referenced compensation levels of certain male executives whose salaries she was aware of.

38. Plaintiff and Ms. Diaz discussed differences in pay between Plaintiff and male leaders.

39. There was also discussion about the compensation of individuals reporting to Plaintiff, which added to Plaintiff's concern regarding internal equity.

40. Plaintiff was compensated at a materially lower level than similarly situated male executives performing comparable executive-level responsibilities.

41. Plaintiff was candid in that conversation and stated that if alignment and fairness were not addressed, Plaintiff would need to consider whether to seek opportunities outside of Espy.

42. Plaintiff's statement was not intended as a threat but rather reflected frustration and

4

a realistic assessment of the situation.

43.     Plaintiff further complained to Ms. Widofsky about differential treatment and, during one conversation, stated in frustration that Ron Ruppersburg might as well offer her a severance package because the gender discrimination was impacting her professionally and personally.

44.     This was not a formal request to leave but reflected how undervalued and stuck Plaintiff felt at the time.

45.     Those discussions were later shared with Ron Ruppersburg, President of MPG.

46.     In October 2024, Plaintiff had a conversation with Ron Ruppersburg regarding Plaintiff's role.

47.     During this same period, Plaintiff was repeatedly described as "not aligned," and Kevin Davis, a male consultant, told her on multiple occasions that she needed to "have thicker skin."

48.     Upon information and belief, male executives who engaged in strong disagreement were not characterized in the same manner.

49.     During that conversation, Ron Ruppersburg issued an ultimatum: accept a demotion to Program Manager or take severance.

50.     Approximately three to four months after raising unequal pay concerns, Plaintiff was presented with two options: severance or demotion.

51.     She was told that she was not speaking with "one voice of MPG" and that her expressed dissatisfaction was problematic.

52.     Ron Ruppersburg also stated that he could not have one of his executives looking for another job.

53.     That same day, Kevin Davis, the male external consultant, was publicly announced

5

as Interim General Manager.

54.     Shortly after raising complaints regarding unequal treatment and compensation, Plaintiff was removed from her role.

55.     At an All-Hands meeting, it was publicly stated that "nothing would change with what Andrea does in Austin."

56.     Despite losing title and executive authority, Plaintiff continued overseeing day-to-day operations and program execution for Espy's Austin operations.

57.     No documented performance deficiencies or objective metrics were provided to justify the demotion.

58.     Following the demotion, Plaintiff continued performing the same operational and compliance responsibilities she had handled as General Manager, responsibilities related to ongoing operations and regulatory obligations.

59.     Plaintiff was increasingly excluded from leadership meetings and decision-making while still being held accountable for outcomes.

60.     Plaintiff's responsibilities as Facility Security Officer continued during this period.

61.     During Plaintiff's own performance review, Kevin Davis stated that leadership had previously discussed terminating Plaintiff and that he had advocated for offering Plaintiff the option of demotion rather than immediate termination.

62.     When Plaintiff asked for clarification or support, Plaintiff was told to "sweep it under the rug."

63.     On March 14, 2025, Plaintiff filed an EEOC charge alleging sex discrimination, retaliation, and unequal pay.

64.     Plaintiff remained employed.

65.     Following the EEOC filing, Defendant refused to hear Plaintiff's internal

complaints and closed her ethics complaints despite them not being resolved.

66.     Plaintiff complained about this, internally, on April 6, 2025, stating "I previously submitted this in 4 separate ethics claims: 377315169901, 402078145901, 697679639601, and 377239798001 which were closed due to an open EEOC claim. The claims that were submitted may be related but are ethics violations against our code of conduct and need to be investigated by someone above MPG and Segment VP of HR. They should have never been closed because there is an open EEOC claim."

67.     Plaintiff experienced ongoing exclusion from leadership forums, heightened scrutiny, micromanagement, and erosion of authority.

68.     Responsibilities were selectively reduced, while accountability remained.

69.     In September 2025, Plaintiff applied for the Vice President, Spectrum Operations role, which replaced Plaintiff's former VP/GM position.

70.     Plaintiff was rejected without an interview.

71.     The role was later reposted and ultimately filled by a man, Kevin Davis.

72.     Plaintiff reiterated complaints of discrimination in January 2026, stating that she believed Defendant's conduct with respect to the EEOC investigation was illegal and/or improper.

73.     Within approximately two weeks of those renewed complaints, Plaintiff was terminated.

74.     Plaintiff was terminated on February 11, 2026 based on an allegation that a prospective client who had attended a product demonstration felt "uncomfortable" with Plaintiff.

75.     That concern had never previously been raised with Plaintiff and was not documented prior to the termination meeting.

76.     At the time of termination, Plaintiff was on track for a 2025 bonus based on a 15 percent target and around 118 percent KPI multiplier, payable in March 2026.

77.     Termination occurred prior to payout, and Plaintiff was required to be employed on the payout date to receive the bonus.

78.     Plaintiff perceived and understood the timing of the termination to be such that Defendant was retaliating against her.

79.     Specifically, Defendant both terminated Plaintiff because she was a woman who had complained about discrimination, and terminated her expeditiously to avoid paying her any bonus in March.

**CAUSES OF ACTION**
**FIRST CLAIM**
**Gender/Sex Discrimination under the Equal Pay Act, Title VII, and Chapter 21 of the Texas Labor**

80.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 79 with the same force as though separately alleged herein.

81.     Under Title VII, it is illegal for an employer to discriminate against an employee on the basis of gender/sex.

82.     Chapter 21 of the Texas Labor Code tracks and mirrors Title VII and incorporates it as Texas State Law.

83.     Under the Equal Pay Act, it is illegal to compensate men and women differently because of gender.

84.     Plaintiff was paid less because she is a woman, and, upon information and belief, defendant maintains a pattern and practice of intentionally under paying women as compared to men.

85.     Plaintiff is a woman and was treated differently based on this protected class.

86.     Plaintiff's demotion was motivated, at least in part, by her gender.

87.     Plaintiff was treated less favorably than male employees with respect to compensation, expectations, terms, privileges, and conditions of her employment.

88.     Plaintiff's termination was motivated, at least in part, by her gender.

89.     As such, Defendant intentionally and willfully violated Plaintiff's right to be free from discrimination, and owes Plaintiff all front pay, back pay, emotional distress damages, punitive damages, attorney fees, costs, and expenses.

**SECOND CLAIM**

**Retaliation based on Gender/Sex under Title VII and Chapter 21 of the Texas Labor**

90.     Plaintiff hereby realleges and incorporates each and every allegation contained

9

in paragraphs 1 through 79 with the same force as though separately alleged herein.

91.    Under Title VII, it is illegal for an employer to discriminate against an employee on the basis of gender/sex.

92.    Under Title VII, it is illegal for an employer to retaliate against an employee who raises concerns about mistreatment and discrimination on the basis of gender/sex in the workplace.

93.    Chapter 21 of the Texas Labor Code tracks and mirrors Title VII and incorporates it as Texas State Law.

94.    Plaintiff is a woman and was discriminated against because of this protected status.

95.    Plaintiff complained about this discrimination on multiple occasions.

96.    Within months of raising complaints of discrimination, Plaintiff was demoted.

97.    Following her renewed complaints in January 2026, Plaintiff was terminated.

98.    As such, Defendant intentionally and willfully violated Plaintiff's right to be free from retaliation, and owes Plaintiff all front pay, back pay, emotional distress damages, punitive damages, attorney fees, costs, and expenses.

## <u>REQUEST FOR RELIEF</u>

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

B. For the second cause of action, damages for wages and emotional distress,

compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements; and

C.  For such other and further relief as the Court deems just and proper.

Dated:  Dallas, Texas
March 2, 2026

**HARMAN GREEN LLC**

By:  _____

Evan Richardson, Esq.
HARMAN GREEN LLC
824 Exposition Ave.,
Suite 8
Dallas, Texas 75226
(646) 248-2288
wharman@theharmanfirm.com
erichardson@theharmanfirm.com
*Attorneys for Plaintiff*

CERTIFICATE OF SERVICE
I certify that the foregoing was served pursuant to this Court's electronic filing system.

**HARMAN GREEN LLC**

By:

11